UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| AMELIA D. PARKER | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | NO. 1:04-CV-320 |
| | ) | EDGAR/CARTER |
| JO ANNE B. BARNHART | ) | |
| Commissioner of Social Security | ) | |
| Defendant | ) | |

REPORT AND RECOMMENDATION

This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule

72(b) of the Federal Rules of Civil Procedure for a Report and Recommendation regarding the

disposition of the plaintiff's Motion for judgment (Court File No. 14) and defendant's Motion for

Summary Judgment (Court File No. 17).

This action was instituted pursuant to 42 U.S.C. § 405(g) seeking judicial review of the

final decision of the Commissioner of Social Security denying the plaintiff a period of disability

and disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 416(i) and 423.

It is RECOMMENDED the decision of the Commissioner be AFFIRMED.

.                    Plaintiff's Age, Education, and Past Work Experience

Plaintiff was thirty-five years old on the date her insured status for DIB expired and had a

high school education and two years of college[1] (Tr. 82, 98). She had past work experience as an

attendant, assistant manager, and substitute teacher, all jobs that required more skill and/or

exertional level than the ALJ ultimately found that Ms. Parker could perform (Tr. 21, 93). She

---

[1]In a disability report dated August 28, 2000, the interviewer reported the highest grade
plaintiff completed was one year of college (Tr. 98). In a second disability report signed by
plaintiff on March 3, 2003, she reported completion of two years of college (Tr. 112).

alleges that she became disabled on September 15, 1999, due to an industrial injury to her back, also affecting her legs (Tr. 16, 17, 92).

## Claim for Benefits

On March 5, 2003, the plaintiff filed applications for a period of disability and disability insurance benefits with an alleged onset date of September 15, 1999 (The plaintiff initially filed an application of disability insurance benefits on August 28, 2000, which was denied on September 28, 2000). The claim was denied initially and upon reconsideration. The ALJ found the defendant not to be disabled. This matter is now ripe for judicial review. *See* 42 U.S.C. § 405(g).

## Standard of Review - Findings of the ALJ

To establish disability under the Social Security Act, a claimant must establish she is unable to engage in any substantial gainful activity due to the existence of "a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); Abbot v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990). The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. § 404.1520. The following five issues are addressed in order: (1) if the claimant is engaging in substantial gainful activity he/she is not disabled; (2) if the claimant does not have a severe impairment he/she is not disabled; (3) if the claimant's impairment meets or equals a listed impairment he/she is disabled; (4) if the claimant is capable of returning to work he/she has done in the past he is not disabled; (5) if the claimant can do other work that exists in significant numbers in the regional or the national economy he/she is not disabled. Id. If the

2

ALJ makes a dispositive finding at any step, the inquiry ends without proceeding to the next step. 20 C.F.R. § 404.1520; Skinner v. Secretary of Health & Human Servs., 902 F.2d 447, 449-50 (6th Cir. 1990). Once, however, the plaintiff makes a prima facie case that he/she cannot return to his/her former occupation, the burden shifts to the Commissioner to show that there is work in the national economy which he/she can perform considering his/her age, education and work experience. Richardson v. Secretary, Health and Human Servs., 735 F.2d 962, 964 (6th Cir. 1984); Noe v. Weinberger, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 28 L. Ed. 2d 842, 92 S. Ct. 1420 (1971); Landsaw v. Secretary, Health and Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed. Ross v. Richardson, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. Felisky v. Bowen, 35 F.3d 1027 (6th Cir. 1994) (citing Mullen v. Bowen, 800 F.2d 535, 548 (6th Cir. 1986)); Crisp v. Secretary, Health and Human Servs., 790 F.2d 450 n. 4 (6th Cir. 1986).

After considering the entire record, the ALJ made the following findings:

1. The claimant meets the disability insured status requirements of the Act through June 30, 2003.

2. The claimant has not engaged in substantial gainful activity since September

3

15, 1999.

    3. The claimant has "severe" impairments, as described in the decision, but does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

    4. The claimant's subjective complaints are not fully credible.

    5. The claimant has the residual functional capacity to perform unskilled sedentary work activity.

    6. The claimant is unable to perform any past relevant work and the issue of transferability of skills is immaterial due to the claimant's young age.

    7. The claimant is 35 years old, which is defined as a younger individual.

    8. The claimant reports a high school education and two years of college.

    9. Based on an exertional capacity for sedentary work and the claimant's age, education, and work experience, 20 CFR § 404.1569 and Rule 201.28, Appendix 2, Subpart P, Regulations No. 4 directs a conclusion of "not disabled."

    10. The claimant has not been under a "disability," as defined in the Social Security Act, at any time through the date of this decision.

(Tr. 22).

## Issues Raised

Plaintiff seeks reversal or remand asserting the following errors:

    1. The ALJ erred in determining that the claimant could perform the full range of unskilled sedentary work, specifically, he failed to consider the claimant's non-exertional impairment of pain and the need to alternate positions at least every hour.

    2. The ALJ failed to comply with 20 CFR § 404.1527 in not according adequate weight to the opinion of the claimant's treating physician.

## Relevant Facts

In September 1999, Ms. Parker saw Scott Desjarlais, M.D., after she injured her back and

right leg lifting a student from a wheelchair while at work (Tr. 314). He assessed low back strain

4

and treated her with injections (Tr. 314). In October 1999, Ms. Parker was given a lumbar epidural steroid injection to relieve her lower back and leg pain (Tr. 142-47). Noel Barron, M.D., reported that the injection resulted in "good pain relief" (Tr. 144). A lumbar spine MRI scan revealed disc degeneration and disc protrusion (Tr. 311-12).

Ms. Parker treated with Gregory N. Ball, M.D. (Tr. 213-69, 339-98, 477-87). In December 1999, Ms. Parker underwent a discogram that confirmed her degenerative disc disease with no evidence of nerve entrapment or radiculopathy (Tr. 397). During February through June 2000, Ms. Parker continued to complain of right leg and low back pain (Tr. 148-65). In March 2000, Dr. Ball noted that Ms. Parker was beginning to show some improvement with low back pain. The leg pain remained unchanged (Tr. 394). She received injection blocks in May and June 2000 (Tr. 388-91). In July 2000, Dr. Ball reported that Ms. Parker's lower extremity symptoms had "improved significantly" (Tr. 387). She still had "quite a long way to go" with the interference of the leg pain but Dr. Ball felt that she should improve in two or three months (Tr. 387).

In September 2000, James N. Moore, M.D., reviewed Ms. Parker's records for the state agency (Tr. 166-73). Dr. Moore opined that Ms. Parker remained capable of performing work at the light exertional level (Tr. 167). She was limited in her ability to push/pull with her legs (Tr. 167). She was restricted to frequent (as opposed to constant) postural activities (Tr. 168).

In October 2000, Ms. Parker was hospitalized for back surgery (Tr. 174-202). Scott Hodges, D.O., explained that Ms. Parker had injured her back in September 1999 (Tr. 176, 422-24). After conservative care, her condition had not improved and she needed back surgery (Tr. 176, 382-84, 412-20). After surgery, Dr. Hodges reported that Ms. Parker was "doing well" (Tr.

5

175).  A few days after Ms. Parker was released home, she returned to the hospital with complaints of swelling at the surgical site (Tr. 203-12).  X-rays of the chest and abdomen were normal (Tr. 208).  The hospital doctor suspected a possible wound infection and treated her with medications and released her with instructions to continue her regular medications and follow-up with Dr. Hodges (Tr. 210-11).  Ms. Parker reported "significant improvement" by December 2000 (Tr. 410).

In January 2001, Dr. Ball reported that, although Ms. Parker did well after her back surgery, she had some recurrence of back and right heel pain (Tr. 380-81).  He treated her with a series of right lumbar blocks (Tr. 216, 227, 236, 249, 261).  In May 2001, Ms. Parker reported greater than fifty percent relief of back and right leg pain (Tr. 217).  In April 2001, Dr. Ball reported that Ms. Parker's pain was "fairly well controlled" (Tr. 378).  That same month, Ms. Parker reported to Dr. Hodges that on April 24, 2001, she fell out of a chair and that her pain was a nine on a scale of one-to-ten and that her pain was intensified by walking and sitting (Tr. 406).  She reported that nothing diminished the pain (Tr. 406).  However, her sitting straight leg raising test was negative bilaterally and her leg motor strength was 5/5 (Tr. 406).  Her lumbar spine x-rays showed hardware in excellent position.  Fusion was noted (Tr. 406).  Dr. Hodges gave her an injection but Ms. Parker reported on June 5, 2001, that she had made no improvement since her last visit (Tr. 406).  In May 2001, Ms. Parker returned to Dr. Desjarlais and explained that she was having "difficulty coping, difficulty sleeping, and a lot of anxiety" (Tr. 297).  He assessed chronic back problems, panic attacks, insomnia, weight gain, and fatigue (Tr. 297).

In June 2001, Ms. Parker saw Terry Holmes, M.D., as part of her workers' compensation claim (her original September 1999 injury happened at work) (Tr. 431-34).  Ms. Parker

explained that she originally had good results from her back surgery but "incapacitating pain" and depression came back and was accompanied by depression manifested by sleep disturbance (Tr. 431). On mental status examination, she was distressed and her mood was sad and irritable (Tr. 432). Her thought processes were generally goal directed and her concentration was mildly impaired (Tr. 432). Dr. Holmes agreed to take Ms. Parker as a patient and changed her medications (Tr. 433). Within a month, her racing thoughts had decreased and she had no psychotic symptoms (Tr. 433). Her agitation and irritability had decreased and she was no longer nearly as distractible (Tr. 433). Her mood was better and her sleep patterns were better (Tr. 433). Dr. Holmes again changed her medication (Tr. 433). Dr. Holmes felt that Ms. Parker just needed "a little more time for complete mood stabilization" (Tr. 434). He continued to treat her and adjusted her medications from time to time (Tr. 426-30).

In June 2001, Dr. Ball reported that Ms. Parker continued to complain of low back and right leg pain (Tr. 369). Dr. Ball noted that he reviewed a recent functional capacity evaluation performed by Rob Pearce and agreed that Ms. Parker could do "light duty" work with the ability to change positions freely (Tr. 369). He also noted that she still had significant anxiety and depression related to her pain condition (Tr. 369). Also in June 2001, Dr. Hodges reported that he reviewed the same functional capacity evaluation (Tr. 405). He felt that the results were a reliable representation of Ms. Parker's functional abilities (Tr. 405). Dr. Hodges restricted Ms. Parker to lifting no more than twenty pounds occasionally and fifteen pounds frequently (Tr. 405). He opined that she needed to change positions every hour (Tr. 405).

In August 2001, Dr. Ball reported that Ms. Parker's low back pain continued to improve but she still complained of right leg pain (Tr. 366). He found tenderness, but her straight leg

7

raising was negative and her deep tendon reflexes were positive and equal (Tr. 367). She was

able to heel, toe, and tandem walk (Tr. 367). There were no new neurological deficits (Tr. 367).

In October 2001, Ms. Parker returned to Dr. Hodges with complaints of back and leg pain

(Tr. 405). There were no spasms, straight leg raising was negative, her leg motor strength was

5/5, and her neurological examination was normal (Tr. 405). Dr. Hodges reported that Ms.

Parker was "negative" for depression and anxiety and that she was being followed by a

psychiatrist (Tr. 405). Also in October 2001, Ms. Parker returned to Dr. Ball and complained of

increased back pain and right leg pain (Tr. 362-63). Dr. Ball noted "quite some progress" under

the care of a psychiatrist and noted that Ms. Parker's mood had been "much more stable" (Tr.

362). A week later, Dr. Ball administered a steroid injection (Tr. 361). He repeated the

injection in November 2001 (Tr. 359). In January 2001, Ms. Parker reported good pain relief

with pain patches but had trouble keeping the patch in place (Tr. 356). She continued to

complain of low back and right leg pain in March 2002 (Tr. 353). Dr. Ball noted that, although

she had excellent pain relief with epidural steroid injections, her mood swings worsened in

intensity (Tr. 353). In May 2002, Ms. Parker returned to Dr. Ball with continuing complaints of

low back and right leg pain (Tr. 349-52). Her back and leg pain continued in July 2002 (Tr. 346-

47).

In August 2002, Dr. Holmes gave a deposition during the course of Ms. Parker's

workers' compensation claim (Tr. 492-505). Dr. Holmes explained that, as of August 2001, Ms.

Parker reported that she could not carry more than fifteen pounds and could not stand long

enough to cook, so he rated her activities of daily living as a mild impairment (Tr. 495). She

reported that she did not want to go out, avoided large crowds, and could not do the activities

that she used to do, so he rated her socialization as a moderate impairment (Tr. 495).  She reported that she was having difficulty with concentration, so he rated concentration as mild (Tr. 495).  Ms. Parker stated that she was unable to work due to her current mental status and level of pain, so he rated her ability to work as marked (Tr. 495).  He opined that Ms. Parker had less than ten percent probability of returning to work (Tr. 497).  He explained that Ms. Parker could not work due to a combination of personality, pain, and malingering (Tr. 497).

In October 2002, Dr. Ball noted that Ms. Parker's mood had stabilized but she continued to complain of low back and leg pain (Tr. 343-45).  He continued to treat her with medication (Tr.345).  In December 2002, Ms. Parker returned to Dr. Hodges and reported that she had increased low back pain (Tr. 403).  She reported that her pain increased with sitting, walking, and ascending/descending stairs (Tr. 403).  In January 2003, Ms. Parker reported "much improvement" with physical therapy (Tr. 402).  She had muscle tenderness but her straight leg raising test was negative and her leg motor strength was 5/5 (Tr. 402).  In January 2003, Ms. Parker reported to Dr. Ball that her low back pain had increased although her back spasms decreased with physical therapy (Tr. 341-42, 478-79).

In April 2003, Ms. Parker saw Carol Phillips, a licensed psychologist, at the request of the state agency (Tr. 435-39).  On mental status examination, Ms. Parker did not smile and was often tearful (Tr. 438).  She complained of back and leg pain (Tr. 438).  Her language skills were productive and intelligible (Tr. 438).  Her rate of speech was normal and she had a quiet tone of voice (Tr. 438).  She was spontaneously verbal and able to maintain concentration (Tr. 438).  Her thoughts were appropriately paced, understandable, relevant, clear, coherent, and well organized (Tr. 438).  Dr. Phillips opined that she was not limited in her abilities to understand,

9

function in a work setting, adapt, and for social interaction (Tr. 439). She was partially limited in her ability to sustain concentration (Tr. 439).

In April 2003, Lawrence G. Scholl, M.D., reviewed Ms. Parker's records for the state agency (Tr. 440-47) and opined that she remained capable of performing light work activity (Tr. 441). She should never climb, could occasionally stoop, and was restricted to frequent (as opposed to constant) stair climbing, balancing, kneeling, crouching, and crawling (Tr. 442).

In May 2003, H. Frank Edwards, Ph.D., reviewed Ms. Parker's records (Tr. 448-64). In considering the "B" criteria for the mental listings, Dr. Edwards opined that Ms. Parker had mild restriction of activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and never had an episode of decompensation (Tr. 458). As for Ms. Parker's ability to work, Dr. Edwards opined that Ms. Parker could understand, remember, and carry out low-level detailed instructions (Tr. 464). She could sustain attention and concentration for low-level detailed instructions (Tr. 464). She could keep to a schedule, maintain attendance, and complete a workweek while dealing with low-level detailed tasks (Tr. 464). She could work with and around others, including the general public, without difficulty and could set realistic goals without significant emotional difficulty (Tr. 464).

In September 2003, Ms. Parker began seeing Gulshan A. Sultan, M.D., in place of Dr. Holmes (Tr. 465-76). At their first meeting in September 2003, Dr. Sultan circled word choices and noted that Ms. Parker was depressed and anxious (Tr. 468). She had a poor memory and concentration (Tr. 468). She was alert and her thoughts were organized and normal (Tr. 468). He assessed bipolar disorder (Tr. 469). In October 2003, and again in November 2003, Dr.

Sultan noted that she seemed depressed and she reported difficulty sleeping (Tr. 472-73). In

January 2004, Dr. Sultan again noted that she was depressed and he changed her medications

(Tr. 474-75). In March 2004, Dr. Sultan noted her depressed mood but also noted that she was

alert, and her thoughts were normal and organized (Tr. 476).

In September 2003, Ms. Parker returned to Dr. Ball with complaints of back and leg pain

(Tr. 480-82). On examination she had full range of motion (Tr. 481). There was diminished

sensation in the right, but no gross motor deficits, and her deep tendon reflex was intact (Tr.

481). She had normal gait and station (Tr. 481). Dr. Ball recommended a continued routine of

medication, weight loss, and walking program (Tr. 482).

In April 2004, Dr. Ball opined that Ms. Parker could lift no more than fifteen pounds

occasionally and ten pounds frequently (Tr. 489). She could stand/walk for less than two hours

in an eight-hour workday (Tr. 489). She could sit for less than about six hours in an eight-hour

workday (Tr. 490). She was limited in her ability to push/pull with her legs (Tr. 490). She could

occasionally climb, kneel, crouch, never crawl, but could frequently balance (Tr. 490). She was

limited in her ability to reach and handle and should avoid vibration and hazards (Tr. 491).

Hearing Testimony

Ms. Parker explained that she was unable to work because her back and leg pain

impacted her activities and her sleep (Tr. 40). She seldom climbed stairs because she had fallen

a number of times on stairs and was, therefore, afraid of stairs (Tr. 40, 41). She testified that she

could stand for an hour-and-a-half, or possibly two hours at a time (Tr. 41). She could sit for a

half-hour (Tr. 41, 42). She explained that, during the course of a regular day, she had to stop and

rest for at least a half-hour about four-to-five times a day (Tr. 42). She had a fear of crowds, she

11

was anxious when out in public, and she had panic attacks when she drove (Tr. 42, 43). She had

difficulty remembering things and with concentration (Tr. 44, 46-48). She stopped going to

church because she could not bear to be around people and could not sit through the church

service (Tr. 44-45).

Norma Capone testified as a vocational expert (Tr. 49-57). The vocational expert

testified that there were over 1,400 different job titles in the category of sedentary, unskilled jobs

(Tr. 54). The vocational expert explained that these jobs required "some level" of concentration

and "some level" of working with co-workers but that these jobs did not routinely include

working with heavy equipment (Tr. 56). The individual would need to be able to maintain pace

and concentration (Tr. 57).

Analysis

Plaintiff raises two issues: First, she argues that the ALJ erred in determining that the

plaintiff could perform the full range of unskilled sedentary work, specifically, he failed to

consider the claimant's non-exertional impairment of pain and the need to alternate positions at

least every hour. Second, plaintiff argues that the ALJ failed to comply with 20 CFR § 404.1527

in not according adequate weight to the opinion of the claimant's treating physician. For reasons

that follow, I conclude there is substantial evidence to support the findings of the ALJ.

<u>The ALJ's RFC was Supported by Substantial Evidence</u>

Ms. Parker argues that the ALJ's RFC assessment was "simply conclusory" with no

"rationale or reference to the supporting evidence." Plaintiff's Brief at 2-4. She further argues

that the ALJ failed to include a function-by-function evaluation, citing to Social Security Ruling

96-8p. Plaintiff's Brief at 4. The SSR does require articulation but does not require such a

12

detailed statement. It requires a sufficient articulation of the ALJ's rationale such that it can be followed by the Court.

The ALJ found that Ms. Parker retained the ability to perform unskilled sedentary work activity (Tr. 22, finding 5). The ALJ explained that, in determining that Ms. Parker remained capable of sedentary work, he relied on the record as a whole, including the objective evidence, physician's opinions, and Ms. Parker's subjective statements (Tr. 20). He found that, although Ms. Parker was not totally credible, she did have some discomfort due to lumbar spondylosis with mild diminished sensation in the right L-5 distribution (Tr. 20). The ALJ noted that objective evidence had shown complete union of her lumbar fusion with no further abnormalities (Tr. 20, referring to Tr. 175, 367, 405, 406, 481). The ALJ explained that Ms. Parker had been prescribed only a mild non-narcotic analgesic for her back and leg pain (Tr. 19). The ALJ noted that Ms. Parker's back surgery had significantly improved her pain (Tr. 18, referring to Tr. 378, 410). He explained that Ms. Parker's doctors had opined that she could lift twenty pounds occasionally and ten-to-fifteen pounds frequently, above the lifting requirements of sedentary work (Tr. 20, referring to Tr. 272, 405, 489). The ALJ explained that he rejected those parts of Dr. Ball's opinion that she could not work a full work-day or reach and handle with the upper extremities, as the ALJ explained that this opinion was not supported by the record in that his treatment notes did not contain complaints or evaluations of the upper extremity deficits (Tr. 20, referring to Tr. 490-91). Ms. Parker's past relevant work was performed at the medium and light exertional levels and the ALJ reduced Ms. Parker's RFC to sedentary. The ALJ explained his rationale and I conclude SSR 96-8p does not require anything further.

The ALJ found that Ms. Parker was limited to unskilled work. Her prior work was

13

performed at the semi-skilled and skilled level. In explaining his rationale, the ALJ noted Ms.

Parker improved on medication with no further mention of panic attacks after Dr. Holmes

changed her medications (Tr. 19). The ALJ considered Ms. Parker's credibility in discounting

the severity level of her mental impairments (Tr. 19). The ALJ explained that he rejected Dr.

Holmes' disability assessment as not supported by his own treatment notes (Tr. 20). The ALJ

gave great weight to the opinion of Dr. Phillips that Ms. Parker was not limited in her ability to

understand, function in a work setting, to adapt to change, or in social interactions (Tr. 21,

referring to Tr. 439). The ALJ explained that Dr. Phillips noted only a partial limitation in

concentration (Tr. 21, referring to Tr. 439). The ALJ further gave weight to the state agency

psychologist's report which was supported by Dr. Phillips and the evidence as a whole (Tr. 21,

referring to Tr. 464). I conclude the ALJ accommodated the credible limitations set out by the

record and explained his rationale for his RFC finding. SSR 96-8p does not require anything

further.

Vocational Expert Testimony

Although Ms. Parker argues that the vocational expert's testimony concerning her past

relevant work was in error and does not support the ALJ's conclusions (Plaintiff's Brief at 4-7), I

agree with the Commissioner's argument that the ALJ did not rely on vocational expert

testimony, other than to note that the work she performed was beyond her current RFC (Tr. 16-

17). The ALJ found plaintiff capable of unskilled sedentary work activity and found her not

disabled based on that finding and her age, education, and work experience as set out in the

"grid" (Findings 5,9 p., Tr. 22).

14

<u>Substantial Evidence Supports the ALJ's Finding of Sedentary Work</u>

Ms. Parker argues that the ALJ did not discuss whether the requirement for positional changes every hour would impact the ability to perform a full range of sedentary work. Plaintiff's Brief at 8-10. As part of that argument, she argues that the ALJ should have accepted the opinions of Drs. Hodges and Ball (Plaintiff's Brief at 8-9).

The Commissioner argues the ALJ does not need to explain how positional changes impacted her ability to perform a full range of sedentary work, because a finding of a full range of sedentary work reasonably accommodates Dr. Ball's opinion that Ms. Parker needed to change position every hour. Ms. Parker essentially argues such a requirement cannot be accommodated by breaks and a lunch period. The Commissioner, in response to this, argues plaintiff is incorrect in assuming that sedentary work requires a two hour period of constant standing or walking, when, in fact, standing or walking would be intermittent throughout the workday, thus accommodating her need to shift positions every hour. <u>See</u> SSR 83-10 (periods of standing and walking is required only "occasionally' with sedentary work); <u>see also</u> SSR 83-12 (vocational expert testimony required only if there is an "unusual limitation" in the individual's ability to sit or stand). "The regulations do not mandate the presumption that all sedentary jobs in the United States require the worker to sit without moving for six hours, trapped like a seat-belted passenger in the center seat on a transcontinental flight." <u>Halloran v. Barnhart</u>, 362 F.3d 28, 33 (2d Cir. 2004). I conclude these positional changes contemplated by Ms. Parker's doctors are reasonably accommodated by sedentary work.

<u>The Treating Physician Rule</u>

The treating physician rule is based on the assumption that a medical professional who

has dealt with a claimant over a long period of time has a deeper insight into the claimant's condition than one who has examined a claimant but once or simply reviewed the medical evidence. See Barker v. Shalala, 40 F.3d 789 (6th Cir. 1994). However, the ALJ is not required to accept any medical opinion, even that of a treating physician, if that opinion is not supported by sufficient clinical findings. See 20 C.F.R. § 404.1527(d)(3); Bogle v. Sullivan, 998 F.2d 342, 347 (6th Cir. 1993) ("This court has consistently stated that the [Commissioner] is not bound by the treating physician's opinions, and that such opinions receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence.").

Ms. Parker argues that the ALJ should have accepted the opinions of Drs. Hodges and Ball. Plaintiffs' Brief at 8-9. Dr. Hodges restricted Ms. Parker to lifting no more than twenty pounds occasionally and fifteen pounds frequently (Tr. 405). He also opined that she needed to change positions every hour (Tr. 405). Since the ALJ found that Ms. Parker's lifting requirements were sedentary (lifting no more than ten pounds at a time and occasionally lifting or carrying light objects), the ALJ accommodated Dr. Hodges' lifting restriction. Even a positional change every hour would not preclude a full range of sedentary work. Thus, Dr. Hodges' opinion is accommodated by the ALJ's RFC finding.

Dr. Ball opined that Ms. Parker could lift no more than fifteen pounds occasionally and ten pounds frequently (Tr. 489). This restriction was accommodated by a finding of sedentary work. The ALJ explained that he did not accept Dr. Ball's opinion that Ms. Parker needed a positional change every fifteen minutes; could not work a full workday; was limited in her ability to reach and handle; could only occasionally climb, kneel, or crouch; and could not crawl (Tr. 20, referring to Tr. 489-91). The ALJ explained that Dr. Ball based his limitations on Ms.

16

Parker's subjective complaints which were contradicted by his own findings (Tr. 20). This is a legitimate reason to reject the disabling parts of Dr. Ball's opinion. In April 2001, Dr. Ball reported that Ms. Parker's back pain was "fairly well controlled" with medication (Tr. 378). In August 2001, Dr. Ball found low back pain tenderness but her straight leg raising was negative and her deep tendon reflexes were positive and equal (Tr. 367). She was able to heel, toe, and tandem walk (Tr. 367). There were no neurological deficits (Tr. 367). In September 2003, Dr. Ball noted full range of motion, including leg range of motion (Tr. 481). There was diminished sensation in the right, but no gross motor deficits, and her deep tendon reflex was intact (Tr. 481). She had normal gait and station (Tr. 481). As the ALJ noted, these normal findings contradicted Dr. Ball's opinion that Ms. Parker could not work (Tr. 20). I conclude the ALJ has given an adequate explanation of why he gave Dr. Ball's opinion limited weight.

Ms. Parker argues that the ALJ erred in not giving controlling weight to the opinion of Dr. Holmes. Plaintiff's Brief at 10-13. Ms. Parker further argues that the ALJ should have re-contacted Dr. Holmes for additional information. Plaintiff's Brief at 14-15.

The ALJ explained that he rejected Dr. Holmes' opinion that Ms. Parker was unable to work because it was conclusory and not supported by own treatment notes (Tr. 20, referring to Tr. 495-97). Dr. Holmes opined that Ms. Parker could not work due to a combination of personality, pain, and malingering (Tr. 497). Dr. Holmes explained that he rated Ms. Parker's ability to work as a "marked" limitation because Ms. Parker stated that she was unable to work (Tr. 495). Yet, after he began treating Ms. Parker with medication, her racing thoughts had decreased and she had no psychotic symptoms (Tr. 433). Her agitation and irritability had decreased and she was no longer nearly as distractible (Tr. 433). Her mood was better and her

17

sleep patterns were better (Tr. 433). Dr. Holmes continued to treat Ms. Parker and adjusted her medication from time to time (Tr. 426-30). This treatment history contradicts Dr. Holmes' testimony given at her workers' compensation claim.

Moreover, the ALJ weighed the various medical sources, which is what he is charged to do. See Richardson, 402 U.S. at 399 ("The trier of fact has the duty to resolve [the medical evidence] conflict."). The ALJ explained that he gave great weight to the opinions of Drs. Phillips and Edwards. The ALJ was entitled to rely on Dr. Phillips as a consultative examiner and on Dr. Edwards as a state reviewer. See 20 C.F.R. § 404.1527(f)(2)(i) ("State agency medical and psychological consultants . . . are highly qualified physicians and psychologist who are also experts in Social Security disability evaluation."). Based on the evidence before him, I conclude the ALJ reasonably weighed the medical evidence and explained his rationale for rejecting Dr. Holmes.

Ms. Parker argues that, if Dr. Holmes' records were not sufficient, the ALJ had a duty to re-contact Dr. Holmes to obtain further clarification. She takes the same position concerning Dr. Ball. Plaintiff's Brief at 14. The requirement for additional information is triggered, not when the ALJ rejects the opinion, but when the evidence is inadequate to make a determination as to Ms. Parker's disability. "When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision." 20 C.F.R. § 404.1512(e). In this case, the information from Drs. Holmes and Ball was sufficient for the ALJ to know what they opined. The ALJ also knew what clinical and objective findings were noted in their treatment records. Their notes also sufficiently indicated what treatment they suggested

18

for Ms. Parker.  Under these circumstances, I conclude the ALJ was not required to further contact either doctor.

Substantial Evidence Supports the ALJ's Credibility Finding

Ms. Parker argues that the ALJ did not properly consider the opinion of Dr. Ball in connection with Ms. Parker's limitations based on pain.  Plaintiff's Brief at 13-14.

It is true that subjective complaints of pain may support a claim of disability.  See Wyatt v. Sec'y of Health & Human Services, 974 F.2d 680, 686 (6th Cir. 1992).  However, the ALJ was not bound to accept Ms. Parker's own testimony regarding her pain.  See Gooch v. Sec'y of Health & Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Moreover, as in this case, the ALJ has the opportunity to observe the plaintiff, so the ALJ's conclusion with respect to credibility should be accorded deference.  See Casey v. Sec'y of Health & Human Services, 987 F.2d 1230, 1234 (6th Cir. 1993).

Plaintiff's argument concerning the ALJ's credibility finding is that Dr. Ball's opinions support her claim of pain.  It is true that Plaintiff complained of pain to Dr. Ball (Tr. 148-65, 341, 343-45, 349-51, 478-70, 480-82, 353, 362-63, 366, 369, 380-81).  However, as the ALJ noted (Tr. 20), Dr. Ball's treatment notes do not support a claim of disability.  For example, in July 2000, Dr. Ball reported that Ms. Parker's symptoms had "improved significantly" with injection blocks (Tr. 387).  She ultimately needed back surgery and, after surgery, when she began to complain of pain, Dr. Ball treated her with a series of right lumbar blocks (Tr. 215, 227, 236, 249, 261).  Ms. Parker reported greater than fifty percent relief and, within a few months, Dr. Ball reported that Ms. Parker's pain was "fairly well controlled" (Tr. 217, 378).  In January 2003, Ms. Parker reported "much improvement" with physical therapy (Tr. 402).  In September

19

2003, Dr. Ball recommended only a continued routine of medication, weight loss, and a walking

program (Tr. 482). This conservative treatment supports the ALJ's conclusion that, although

Ms. Parker was not pain-free, she retained the ability to perform at least work at the sedentary

exertional level.

Conclusion

For the reasons stated herein, I conclude there is substantial evidence to support the

conclusion of the ALJ and I therefore RECOMMEND  the Commissioner's decision be

AFFIRMED.

I further RECOMMEND defendant's Motion for Summary Judgment (Court File No.17)

be GRANTED, and plaintiff's Motion for judgment (Court File No. 14) be DENIED.[2]


                                                    s/William B. Mitchell Carter
                                                    UNITED STATES MAGISTRATE JUDGE

---

[2]Any objections to this Report and Recommendation must be served and filed within ten
(10) days after service of a copy of this recommended disposition on the objecting party.  Such
objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil
Procedure.  Failure to file objections within the time specified waives the right to appeal the
District Court's order.  Thomas v. Arn, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985).  The
district court need not provide *de novo* review where objections to this report and
recommendation are frivolous, conclusive or general.  Mira v. Marshall, 806 F.2d 636 (6th Cir.
1986).  Only specific objections are reserved for appellate review.  Smith v. Detroit Federation
of Teachers, 829 F.2d 1370 (6th Cir. 1987).